IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PRECISION FRANCHISING, LLC,      )
                                 )
        Plaintiff,               )
                                 )
        v.                       )     1:12cv158 (JCC/TCB)
                                 )
CATALIN GATEJ,                   )
                                 )
        Defendant.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Catalin
Gatej's ("Defendant" or "Gatej") Motion to Dismiss for Lack of
Subject Matter Jurisdiction [Dkt. 20] and Motion to Dismiss for
Failure to State a Claim [Dkt. 22] (the "Motions").  Because the
Motions were filed after Defendant answered the Complaint, they
shall be treated as Motions for Judgment on the Pleadings.  For
the following reasons, the Court will deny Defendant's Motions.

**I. Background**

This case involves the alleged breach of a Franchise
Agreement.

A.    Factual Background

Plaintiff Precision Franchising, LLC ("Plaintiff" or
"Precision Franchising") is a Virginia limited liability company
with its principal place of business in Leesburg, Virginia.
(Compl. [Dkt. 1] ¶ 1.)  Precision Franchising is the licensor of

the Precision Tune Auto Care® system and has licensed others to operate automotive service businesses identified with the Precision Tune Auto Care® service mark and other marks and logos designated as part of the Precision Tune Auto Care® system (the "Marks").  (Compl. ¶ 6.)  The Marks are registered with the United States Patent and Trademark Office.  (Compl. ¶¶ 7-8.) Precision Franchising also alleges that it has acquired common law rights with respect to the Marks and to trade dress common to Precision Franchising locations.  (Compl. ¶ 9.)  Further, Precision Franchising has allegedly provided trade secrets to franchisees, including manuals and software, which are required to be returned at the end of the franchise term.  (Compl. ¶ 11.)

Gatej, a citizen of Massachusetts, is party to a Franchise Agreement (the "Agreement") which requires the operation of a Precision Tune Auto Care® Center (the "Center") in Tyngsborough, Massachusetts.  (Compl. ¶ 12.)  The term of the Agreement was extended to June 6, 2015 pursuant to a renewal letter dated April 11, 2005.  (*Id.*)  The Agreement requires Gatej to pay Precision Franchising an operating fee equal to 7.5 percent of weekly gross sales.  (Compl. ¶ 13.)  The Agreement also requires Gatej to pay Precision Franchising or its designee or to spend as directed by Precision Franchising an advertising fee equal to 9 percent of weekly gross sales.  (Compl. ¶ 14.) Gatej was directed to pay 1.5 percent of weekly gross sales to

Precision Franchising and to spend the remaining amount on advertising for Precision Franchising's benefit.  (*Id.*)

The Agreement prohibits the transfer of substantially all of the assets of the Center without Precision Franchising's prior consent and payment of a fee.  (Compl. ¶ 15.)  The Agreement also requires that Precision Franchising be given a right of first refusal prior to any such transfer.  (Compl. ¶ 16.)  Lastly, under the terms of the Agreement, Defendant agreed to pay Precision Franchising its reasonable attorneys' fees in the event of breach.  (Compl. ¶ 17.)

Precision Franchising alleges that Gatej breached the Agreement by failing to spend the required amounts in advertising.  (Compl. ¶ 19.)  According to Precision Franchising, this amount is no less than $55,055.97.  (*Id.*)  Gatej also allegedly breached the Agreement by prematurely ceasing operation of the Center on or about December 25, 2011, and transferring all or substantially all of its assets to a third party who is not operating the Center as a Precision Tune Auto Care® Center.  (Compl. ¶ 20.)  Precision Franchising alleges that it has suffered no less than $86,765.40 in lost profits as a result of this premature cessation of operations.  (*Id.*)

B.   Procedural Background

Plaintiff filed its Complaint in this Court on February 16, 2012.  [Dkt. 1.]  Plaintiff's sole claim is breach of contract, on which it seeks damages of no less than $141,821.37 and attorneys' fees and costs.  Defendant answered the Complaint on April 6, 2012.  [Dkt. 19.]  Then, on April 12, 2012, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction [Dkt. 20] and a Motion to Dismiss for Failure to State a Claim [Dkt. 22].[1]  Plaintiff filed an opposition to both Motions on April 25, 2012 [Dkt. 30], to which Defendant replied on May 11, 2012 [Dkt. 32].

Defendant's Motions are before the Court.

## II.   Standard of Review

A.   Motion for Judgment on the Pleadings

A motion for judgment on the pleadings may be made after the pleadings are closed but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  To ensure that each litigant receives a full and fair hearing, courts will not grant a Rule 12(c) motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.  *See O'Ryan v. Dehler*

---

[1] The Court notes that Defendant filed the Motions after answering the Complaint.  Because motions to dismiss pursuant to Rule 12(b) must be made prior to the filing of a responsive pleading, Defendant's motions will be treated as motions for judgment on the pleadings under Rule 12(c).  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Humphrey v. Global Equity Lending, Inc.*, No. 2:08cv68, 2008 WL 5262769, at *3 (E.D. Va. Dec. 17, 2008).

*Mfg. Co., Inc.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000)

("Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law.") (citing *Zeran v. Am. Online*, Inc., 129 F.3d 327, 329 (4th Cir. 1997)).  Where a Rule 12(c) motion is based on lack of subject matter jurisdiction and failure to state a claim, the Court applies the standards established by Rules 12(b)(1) and 12(b)(6), respectively.  *See Humphrey v. Global Equity Lending, Inc.*, No. 2:08cv68, 2008 WL 5262769, at *3 (E.D. Va. Dec. 17, 2008).

B.   Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002).  In such instances, all facts alleged in the complaint are presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).  Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue.

*Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.   In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"   *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).   In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff.   *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

      C.   Failure to State a Claim

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   A motion premised on Rule 12(b)(6) tests the legal sufficiency of the complaint.

*Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  In
considering such a motion, the court must accept well-pleaded
allegations as true and must construe factual allegations in
favor of the plaintiff.  *See Randall v. United States,* 30 F.3d
518, 522 (4th Cir. 1994).  The court must also be mindful of the
liberal pleading standards under Rule 8, which require only "a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does
not require "detailed factual allegations," a plaintiff must
still provide "more than labels and conclusions" because "a
formulaic recitation of the elements of a cause of action will
not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56
(2007) (citation omitted).  Rather, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  *Id.*
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice" to meet
this standard, *id.*, and a plaintiff's "[f]actual allegations
must be enough to raise a right to relief above the speculative
level . . . ."  *Twombly*, 550 U.S. at 555.  Moreover, a court "is

7

not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Analysis

First, Defendant argues that the Complaint should be dismissed for lack of subject matter jurisdiction because it fails to demonstrate that the amount in controversy exceeds the jurisdictional minimum of $75,000.  Second, Defendant argues that Precision Franchising is not a party to the Agreement and therefore is not a proper plaintiff in this case.[2]  The Court addresses each argument in turn.

A.   Amount in Controversy

District courts may exercise diversity jurisdiction over a case where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the case is between citizens of different states.  28 U.S.C. § 1332.  Here, Defendant concedes that he and Plaintiff are citizens of different states, but argues that Plaintiff fails to demonstrate that the amount in controversy exceeds $75,000.  This argument is without merit.

In the Complaint, Plaintiff seeks damages in an amount no less than $141,821.37.  $55,055.97 stems from Defendant's alleged failure to make advertising expenditures.  The remaining

---

[2] Plaintiff did not include a copy of the Agreement as an exhibit to the Complaint.  Rather, the document was attached by Plaintiff to an unrelated filing in this case.  [Dkt. 17.]  The Court may nevertheless consider the Agreement since the document is integral to and explicitly relied on in the Complaint and the parties do not challenge its authenticity.  *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

$86,765.40 accounts for lost profits tied to Defendant's alleged premature cessation of operations. Ordinarily, the "sum claimed by the plaintiff controls the amount in controversy determination." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)) (internal quotation marks omitted). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed." *JTH Tax*, 624 F.3d at 638 (emphasis in original) (quoting *St. Paul Mercury*, 303 U.S. at 289) (internal quotation marks omitted). In other words, "[u]nless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

Defendant fails to demonstrate that it is legally certain Plaintiff will not recover the jurisdictional prerequisite. First, Defendant mischaracterizes the $55,055.97 sought by Plaintiff in connection with Defendant's alleged failure to make advertising expenditures. Defendant assumes without basis that this amount constitutes an estimate of advertising expenditures Defendant will fail to make in the

future.   However, this amount is in fact linked to Defendant's alleged failure to make advertising expenditures in the *past*. (Opp. [Dkt. 30] at 5.)   Indeed, contrary to Defendant's assertion otherwise, this follows from a fairly straightforward reading of the Complaint.  (*See* Compl. ¶ 19 ("Defendant *has failed* to expend the requisite amounts in advertising.") (emphasis added).)   In response, Defendant protests that the Complaint is ambiguous "as to the timeline and the basis of this alleged amount due." (Reply [Dkt. 32] at 4.)   Defendant's quibble does not, however, prove that it is legally impossible for Plaintiff to recover the $55,055.97 or that Plaintiff's allegation is in bad faith.  *See Germantown Copy Ctr., Inc. v. ComDoc, Inc.*, No. DKC 10-2799, 2011 WL 1323020, at *3 (D. Md. Apr. 1, 2011) ("A plaintiff's allegation that the matter in controversy exceeds the jurisdictional amount requirement, even when it is in cursory form, has been held to be sufficient by a significant number of federal courts.") (quoting 14AA Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3702 (4th ed. 2011)).

Defendant also fails to demonstrate that it is legally impossible for Plaintiff to recover $86,765.40 in lost profits due to Defendant's alleged premature cessation of operations. In support of his argument, Defendant points to Section 3.2 of the Agreement, which provides that the "Franchisee shall pay to

Franchisor an operating fee equal to seven and one-half percent
(7.5%) of the weekly gross sales of the Franchised Business, but
not less than One Hundred Dollars ($100) each week." (Agreement
[Dkt. 17-1] § 3.2.)  Based on this provision, Defendant asserts
that he could be held liable for at most $100 per week beginning
on the date he ceased operations through the remaining term of
the Agreement.  Defendant calculates this amount as $17,900.[3]
However, it is anything but clear that Defendant is only
potentially liable for the minimum weekly fee.  Defendant's
argument apparently assumes that he could, consistent with the
contract, close up shop.  But, as Plaintiff points out, the
Agreement requires that Defendant "operate an automotive service
business" for the duration of the term. (Agreement § 1.1)  The
Agreement further provides that the Franchisee is in default if
he "without Franchisor's prior written consent, ceases to
operate." (Agreement § 14.2.2.)  Thus, by the terms of the
contract, Defendant had an obligation to continue operating.
Plaintiff represents that its calculation of $86,765.40 in lost
profits is based on the average weekly fee of Defendant's last

---

[3] Defendant makes a similar argument with respect to Section 3.3 of the
Agreement, which provides that the "Franchisee shall pay Franchisor or its
designee an advertising fee equal to nine percent (9%) of the weekly gross
sales of the Franchised Business, but not less than One Hundred Dollars
($100) each week." (Agreement § 3.3.).  He likewise calculates Plaintiff's
maximum recovery under this provision as $17,900.  Notably, this figure is
based on Defendant's failure to make advertising expenditures in the future,
and is independent of the $55,055.97 in damages Plaintiff has allegedly
sustained due to Defendant's failure to make advertising expenditures in the
past.  Based on Sections 3.2 and 3.3 of the Agreement, Defendant concedes for
purposes of this motion that Plaintiff could conceivably recover $35,800.  It
is worth noting that this amount and the alleged $55,055.97 together exceed
the jurisdictional prerequisite.

six months of reported operating revenue.  (Declaration of
Robert Falconi ("Falconi Decl.") [Dkt. 31] ¶ 6.)  Given
Defendant's obligation to remain open, Plaintiff's calculation
of damages is clearly a legal possibility.  That Defendant might
dispute the mathematical accuracy of Plaintiff's calculation
does not satisfy his required showing.  *See JTH Tax*, 624 F.3d at
638.  Thus, Plaintiff has adequately alleged the jurisdictional
prerequisite and diversity jurisdiction exists.  Defendant's
Motion to Dismiss for Lack of Subject Matter Jurisdiction is
denied.

      B.   <u>Proper Plaintiff</u>

      Defendant asserts that because Precision Tune, Inc. is
the party to the Agreement, Precision Franchising is not the
proper plaintiff in this case.  Defendant also argues that any
assignment from Precision Tune, Inc. to Precision Franchising is
invalid because the Agreement is a non-assignable personal
services contract.

      In opposition, Plaintiff explains that Precision
Franchising is the successor-in-interest to Precision Tune, Inc.
(Falconi Decl. ¶ 2.)  After the Agreement was executed,
Precision Tune, Inc. changed its name to Precision Tune Auto
Care, Inc.  (*Id.*)  Precision Franchising was formed thereafter.
(*Id.*)  Precision Tune Auto Care, Inc. later assigned all of its
rights in the Precision Tune Auto Care® system (including all

12

intellectual property and all rights and duties under franchise and related agreements) to Precision Franchising. (*Id.*) Precision Tune Auto Care, Inc. is the sole member of Precision Franchising. (*Id.*)

The Court first examines whether the assignment is plausibly valid. Under Virginia law, "the general rule is that contracts are freely assignable unless the assignment is prohibited by the terms of the Agreement, is barred by public policy, or involves personal services."[4] *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 859 (E.D. Va. 2011) (citations omitted). Here, the only prohibition on assignment in the Agreement is the assignment by the *Franchisee* without the Franchisor's approval. (Franchise Agreement § 15.1.) Assignment by the Franchisor is not prohibited nor does such an assignment contravene public policy.

In arguing that the Agreement is a personal services contract, Defendant cites a provision which states that "the rights and duties of Franchisee . . . are personal to Franchisee" and that "Franchisor has granted this franchise in

---

[4] As a federal court exercising diversity jurisdiction, the Court must apply the choice of law rules of the forum state, *i.e.*, Virginia. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The Agreement contains a choice-of-law provision which provides that it shall be interpreted and construed under Virginia law (unless a provision is unenforceable in Virginia, in which case the provision shall be interpreted and construed under the laws of the state in which the Franchised Business is located). (Agreement § 25.1.) Virginia law favors contractual choice of law provisions, giving them full effect except in unusual circumstances, *see Tate v. Hain*, 181 Va. 402, 410 (Va. 1943), none of which are present here. Virginia law therefore governs.

reliance on the business skill, financial capacity, and personal character of Franchisee and Franchisee's principals." (*Id.*) This provision indicates that the *Franchisee's* obligations under the contract are personal in nature, and supports the prohibition on assignment by the Franchisee, an individual.  The same does not necessarily hold true for the *Franchisor*, a corporation.  Indeed, the Agreement expressly provides that "[a]ll or a portion of the obligations to be performed by Franchisor may be performed on behalf of Franchisor by a third party." (Franchise Agreement § 4.2.)  This language, combined with the fact that the Franchisor is a corporation, weigh against construing the Agreement as a personal services contract.  *See Fransmart*, 768 F. Supp. 2d at 860 (finding contract assignable where corporate entities were involved and contract provided that obligations could be performed by anyone in company).  In any event, even assuming the Agreement were construed as a personal services contract, the assignment at issue could still be valid, as "it is well-settled that a partnership or corporate entity can assign contracts to a successor entity if the successor entity is substantially the same as the original entity." *Id.* at 863.  For these reasons, the Court rejects Defendant's argument that the Agreement is non-assignable as a matter of law.

Defendant next argues that Plaintiff should be required to amend the Complaint and include allegations regarding the assignment.  However, Defendant expressly contracted with Precision Franchising when he renewed the Agreement in 2005.  (Letter Agreement [Dkt. 17-1].)[5]  In fact, the renewal letter states that Precision Franchising is "successor to Precision Tune Auto Care, Inc." (*Id*.)  The Complaint also makes plain the relationship between the two entities in its very first paragraph, where it is stated that Precision Franchising is wholly owned by Precision Tune Auto Care, Inc.  (Compl. ¶ 1.)  Under these circumstances, the Court is satisfied that Defendant possesses adequate information and that amendment of the Complaint is unnecessary.  *See Twombly*, 550 U.S. at 555 (noting that Rule 8(a)(2) requires only "a short and plain statement of the claim" in order to give the defendant fair notice).  As such, Defendant's Motion to Dismiss for Failure to State a Claim is denied.

---

[5] The renewal letter is not included as an exhibit to the Complaint, but may be considered as it is explicitly relied on in the Complaint and the parties do not challenge its authenticity.  *See Phillips v. LCI Int'l Inc.*, 190 F.3d at 618.

## IV.  Conclusion

For these reasons, the Court will deny Defendant's

Motions.

An appropriate Order will issue.


_____
                              /s/
May 23, 2012                  James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE