IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PRECISION FRANCHISING, LLC,   )
                               )
     Plaintiff,          )
                               )
       v.             )   1:12cv158 (JCC/TCB)
                               )
CATALIN GATEJ,           )
                               )
     Defendant.          )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Precision
Franchising LLC's ("Plaintiff" or "Precision Franchising")
Motion for Summary Judgment (the "Motion").  [Dkt. 56.]  For the
following reasons, the Court will grant Plaintiff's Motion.

**I.   Background**

This case involves the alleged breach of a Franchise
Agreement.

A.   <u>Factual Background</u>

Plaintiff Precision Franchising, LLC ("Plaintiff" or
"Precision Franchising") is a Virginia limited liability company
with its principal place of business in Leesburg, Virginia.
(Compl. [Dkt. 1] ¶ 1.)  Precision Franchising is the licensor of
the Precision Tune Auto Care® system and has licensed others to
operate automotive service businesses identified with the

1

Precision Tune Auto Care® service mark and other marks and logos designated as part of the Precision Tune Auto Care® system (the "Marks"). (Compl. ¶ 6.)  The Marks are registered with the United States Patent and Trademark Office. (Compl. ¶¶ 7-8.) Precision Franchising also alleges that it has acquired common law rights with respect to the Marks and to trade dress common to Precision Franchising locations. (Compl. ¶ 9.)  Further, Precision Franchising has allegedly provided trade secrets to franchisees, including manuals and software, which are required to be returned at the end of the franchise term. (Compl. ¶ 11.)

Gatej, a citizen of Massachusetts, is party to a Franchise Agreement (the "Agreement") which requires the operation of a Precision Tune Auto Care® Center (the "Center") in Tyngsborough, Massachusetts. (Compl. ¶ 12; Sec. 1.1, Agreement, Ex. A to Pl. Mem. [56-2].)  The term of the Agreement was extended to June 6, 2015 pursuant to a renewal letter dated April 11, 2005. (Compl. ¶ 12; Letter Agreement, Ex. B to Pl. Mem. [Dkt. 56-2].)  The Agreement provides that Gatej would be in default if he "without Franchisor's prior written consent, ceases to operate." (Agreement § 14.2.2.)  The Agreement requires Gatej to pay Precision Franchising an operating fee equal to 7.5 percent of weekly gross sales. (Compl. ¶ 13; Agreement § 3.2.)  The Agreement also requires Gatej to pay Precision Franchising or its designee or to spend as directed by

2

Precision Franchising an advertising fee equal to 9 percent of weekly gross sales.  (Compl. ¶ 14; Agreement §§ 3.3, 12.1.) Gatej was directed to pay 1.5 percent of weekly gross sales to Precision Franchising and to spend the remaining amount on advertising for Precision Franchising's benefit.  (Compl. ¶ 14; Agreement §§ 3.3, 12.1; Pl. Mem. ¶ 5.)

The Agreement prohibits the transfer of substantially all of the assets of the Center without Precision Franchising's prior consent and payment of a fee.  (Compl. ¶ 15; Agreement § 15.1.)  The Agreement also requires that Precision Franchising be given a right of first refusal prior to any such transfer. (Compl. ¶ 16; Agreement § 15.4.)  Lastly, under the terms of the Agreement, Defendant agreed to pay Precision Franchising its reasonable attorneys' fees and costs in the event of breach. (Compl. ¶ 17; Agreement § 16.2.)

Precision Franchising alleges that Gatej breached the Agreement by failing to spend the required amounts in advertising.  (Compl. ¶ 19; Falconi Decl. at ¶ 5, Exs. D-E to Pl. Mem. [56-1, 56-2].)  According to Precision Franchising, this amount is no less than $64,980.  (*Id.*)  Gatej also allegedly breached the Agreement by prematurely ceasing operation of the Center on or about December 25, 2011, and transferring all or substantially all of its assets to a third party who is not operating the Center as a Precision Tune Auto

Care® Center.  (Compl. ¶ 20; Falconi Decl. ¶ 6.)  Precision

Franchising calculates that it has suffered no less than $83,511

in lost profits as a result of this premature cessation of

operations.  (Falconi Decl. ¶ 6, Ex. F to Pl. Mem. [Dkt. 56-1].)

As a result, Precision Franchising calculates that it has

suffered no less than $148,491 in total damages.

> B.   Procedural Background

On February 16, 2012, Plaintiff filed its Complaint in

this Court.  [Dkt. 1.]  In its Complaint, Plaintiff brought a

sole claim of breach of contract, on which it sought damages of

no less than $141,821.37 and attorneys' fees and costs.

Defendant failed to submit his Answer by the required date of

March 14, 2012.  [Dkt. 2.]  As a result, on March 19, 2012,

Plaintiff moved for Entry of Default against Defendant.  [Dkt.

5.]  Defendant filed his opposition to that motion the same day

[Dkt. 10], and also filed a Motion for Request of Additional

Time to Respond to Complaint and for Other Relief on March 25,

2012 [Dkt. 15].  On March 27, 2012, the Court granted Defendant

leave to file a late response to the Complaint. [Dkt. 18.]

Defendant filed his Answer on April 6, 2012.  [Dkt. 19.]  Then,

on April 12, 2012, Defendant filed a Motion to Dismiss for Lack

of Subject Matter Jurisdiction [Dkt. 20] and a Motion to Dismiss

for Failure to State a Claim [Dkt. 22].  The Court treated

Defendant's motions to dismiss as motions for judgment on the

pleadings under Rule 12(c) because they were made after Defendant had filed his Answer, and denied these motions on May 23, 2012.  [Dkt. 34-35.]

On May 30, 2012, Defendant's attorneys filed a motion to withdraw, which this Court granted.  [Dkt. 36-37.]  Defendant has been *pro se* for the remainder of this litigation.

For the purposes of the current motion, certain points about the procedural history of discovery in this case are worth noting.  On June 21, 2012, Plaintiff served its First Requests for Admission, First Set of Interrogatories, and First Set of Document Requests on Defendant.  (Pl. Mem. [Dkt. 56] ¶ 15.)  The parties mutually agreed to an extended deadline of August 28, 2012 for Defendant's discovery responses.  (Pl. Mem. Motion to Compel [Dkt. 43] at 2; Def. Motion to Continue the Pre-Trial Conference [Dkt. 50] at 1.)  Defendant, however, did not provide any responses at that time.  On September 4, 2012, this Court issued a Scheduling Order in which the Court set a Fed. R. Civ. P. 16(b) Pretrial Conference for October 10, 2012 and Final Pretrial Conference for December 20, 2012, and ordered that the parties confer pursuant to Rule 26(f) prior to the Pretrial Conference, that they file proposed discovery plans by October 3, 2012, and that discovery would close by December 14, 2012. [Dkt. 41.]

On September 13, 2012, Plaintiff filed a motion to compel responses to its discovery requests. [Dkt. 42-43.] Defendant did not file an opposition and did not attend the September 28, 2012 hearing on the Motion to Compel. [Dkt. 48.] On September 28, 2012, the Court granted Plaintiff's Motion to Compel, ordered that Defendant must make complete discovery responses by October 12, 2012, and warned Defendant that failure to comply with this Order could result in sanctions including default judgment. [Dkt. 49.] Defendant did not provide any discovery responses by this court-ordered deadline. (Pl. Mem. [Dkt. 56] ¶ 18.)

On September 27, 2012, Defendant filed a Motion to Continue the Pre-Trial Conference, requesting the conference be moved from October 10, 2012 to at least six months after Defendant's knee replacement surgery scheduled for October 31, 2012. [Dkt. 50.] On October 9, 2012, this Court granted the motion, rescheduling the pretrial conference to October 24, 2012 and ordering that Defendant could attend the conference telephonically. [Dkt. 53.]

On October 3, 2012, Plaintiff filed its own proposed discovery plan, noting that it had tried unsuccessfully to confer with Defendant in order to file a joint proposed Rule 26(f) discovery plan. [Dkt. 51.] On October 24, 2012, this Court held the rescheduled Rule 16(b) Pretrial Conference, with

counsel for Plaintiff appearing in person and Defendant attending telephonically.  [Dkt. 54.]  During that conference, Defendant was verbally admonished by Magistrate Judge Buchanan to comply with the outstanding discovery requests.  (Pl. Mem. [Dkt. 56] ¶ 18.)  The Court also approved Plaintiff's proposed discovery plan.  [Dkt. 54-55.]  Following the conference, on October 25, 2012, Defendant filed his responses to Plaintiff's First Requests for Admission, First Set of Interrogatories, and First Set of Document Requests.  (Tepper Decl. Exs. H-J [Dkt. 56-1].)

On November 13, 2012, Plaintiff filed a Motion for Summary Judgment (the "Motion") and a memorandum in support. [Dkt. 56.]  Plaintiff included a proper *Roseboro* notice in that motion warning Defendant that the Court could grant judgment to Plaintiff on the basis of its Motion if he did not file a response.  [*Id.* at 1.]  Defendant did not file an opposition brief.

Plaintiff's unopposed Motion is before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*,

80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment.  *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).  Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could

lead a reasonable trier of fact to find for the non-movant."
*Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th
Cir. 1991) (citations omitted).

### III. Analysis

Plaintiff asserts two arguments for why it is entitled
to summary judgment on its breach of contract claim.  First,
Plaintiff argues that Defendant has admitted -- via his failure
to timely deny Plaintiff's Requests for Admission -- that he
breached the Agreement by failing to expend required funds on
advertising during the last five years and by prematurely
terminating the agreement by ceasing to operate the franchise
auto center, resulting in a total of at least $148,491 of
damages.  (Pl. Mem. at 1.)  Plaintiff asserts that summary
judgment is appropriate based on the uncontroverted facts
established by these admissions, Plaintiff's other evidence, and
Defendant's sole produced document, a chart of advertising
expenses.  (*Id.* at 7-11.)  Second, Plaintiff argues that
Defendant is in contempt of this Court's September 28, 2012
Order to provide complete discovery responses to Plaintiff's
outstanding requests by October 12, 2012.  (*Id.* at 1, 9-10.)
Plaintiff claims that Defendant has not fully provided responses
and that the limited responses which were provided are primarily
objections, not appropriate substantive responses.  (*Id.* at 10.)
As a result, Plaintiff argues that summary judgment is an

appropriate sanction, especially given Defendant's other
repeated abuses and this Court's explicit warning that his
failure to comply could result in it rendering judgment against
him.  (*Id.*)

### A.   Requests for Admission

As an initial matter, the Court must determine whether
Plaintiff's Requests for Admissions are deemed admitted under
Federal Rule of Civil Procedure 36 when Defendant failed to
timely respond to the requests and then, despite not filing a
motion for an extension of time or a motion to withdraw or amend
any deemed admissions, filed his response almost two months
later than the parties' agreed upon extended deadline.  Rule 36
states that:

> A matter is admitted unless, within 30 days after
> being served, the party to whom the request is
> directed serves on the requesting party a written
> answer or objection addressed to the matter and
> signed by the party or its attorney. A shorter or
> longer time for responding may be stipulated to
> under Rule 29 or be ordered by the court.

Fed. R. Civ. Pro. 36(a)(3).  As other courts have noted, the
"sanction for failure to respond to a request for admission is
self executing." *Hill v. Laury*, No. 3:06CV79, 2006 WL 2631796
(E.D. Va. Sept. 13, 2006); *see also Layton v. Int'l Ass'n of
Machinists & Aerospace Workers*, 285 F. App'x 340, 341 (9th Cir.
2008).  "[O]nce a matter that is properly subject of an
admission under Rule 36 has been admitted during discovery, the

district court is not free to disregard that admission."
*Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x
169, 173 (4th Cir. 2005).  Matters admitted under Rule 36 are
"conclusively established unless the court, on motion, permits
the admission to be withdrawn or amended."  Fed. R. Civ. P.
36(b) (emphasis added).  "This conclusive effect applies equally
to those admissions made affirmatively and those established by
default, even if the matters admitted relate to material facts
that defeat a party's claim."  *Am. Auto. Ass'n (Inc.) v. AAA
Legal Clinic of Jefferson Crooke*, P.C., 930 F.2d 1117, 1120-21
(5th Cir. 1991).

        In addition, Rule 36 limits the district court's
discretion regarding the withdrawal or amendment of admissions.
"Once made, an admission may be withdrawn only if: a) the
withdrawal would promote the presentation of the merits of the
action, and b) allowing the withdrawal would not prejudice the
party that obtained the admission."  *Adventis*, 124 F. App'x at
173 (citing Fed. R. Civ. P. 36(b) ("[T]he court may permit
withdrawal or amendment if it would promote the presentation of
the merits of the action and if the court is not persuaded that
it would prejudice the requesting party in maintaining or
defending the action on the merits.")).

        In this case, Defendant failed to respond to
Plaintiff's Requests for Admission by the August 28, 2012

                              11

extended deadline.  (Pl. Mem. Motion to Compel [Dkt. 43] at 2;
Def. Motion to Continue the Pre-Trial Conference [Dkt. 50] at
1.)  As a result, Plaintiff's Requests for Admissions
automatically were admitted at that time.  In addition,
Defendant did not file a motion for an extension of time to
respond or a motion to withdraw the deemed admissions and to
file an untimely response.  Defendant did, however, file an
untimely response to Plaintiff's Requests for Admissions on
October 25, 2012.  (Ex. H to Pl. Mem. [Dkt. 56-1].)  In *Metpath,
Inc. v. Modern Medicine*, the Fourth Circuit approved of the
position taken by a number of other circuit courts that "a late
response was the equivalent of a motion to withdraw or amend a
response, and that amendment could be allowed when the opposing
party suffered no prejudice by the amendment."  934 F.2d 319, at
*2-3 (4th Cir. 1991) (citing *Gutting v. Falstaff Brewing Corp.*,
710 F.3d 1309, 1312 (8th Cir. 1983); *Moosman v. Joseph P. Blitz,
Inc.*, 358 F.2d 686, 688 (2d Cir. 1966); *French v. United States*,
416 F.2d 1149, 1152 (9th Cir. 1968)).  As a result, the Court
will treat Defendant's untimely response as a motion to withdraw
or amend his deemed admissions.  As such, the Court must
consider the Rule 36(b) discretionary factors to determine
whether to accept or disregard Defendant's untimely response.
*See Bailey v. Christian Broad. Network*, 11-2348, 2012 WL
2161643, at *1 (4th Cir. June 15, 2012) (holding that the "Rule

36(b) factors were integral to the court's determination" of whether to allow a party's untimely response to requests for admissions); *Gutting*, 710 F.2d at 1313.

Based on the following analysis of the Rule 36(b) factors, the Court concludes that it will not permit Defendant to withdraw his deemed admissions and substitute his untimely responses. While conducting this assessment, it is important to reiterate that "there is 'absolutely no right to withdraw admissions' and 'withdrawal is at the discretion of the court.'" *Adventis, Inc. v. Big Lots Stores, Inc.*, No. 7:02CV00611, 2006 WL 2631760, at *2 (W.D. Va. Sept. 11, 2006) (quoting *In re Fisherman's Wharf Fillet, Inc.*, 83 F.Supp.2d 651 (E.D. Va. 1999)). "[T]he decision to allow a party to withdraw its admissions is quintessentially an equitable one, balancing the rights to a full trial on the merits, including the presentation of all relevant evidence, with the necessity of justified reliance by parties on pre-trial procedures and finality as to issues deemed no longer in dispute." *Id.* (quoting *McClanahan v. Aetna Life Ins. Co.*, 144 F.R.D. 316, 320 (W.D.Va.1992)).

The first factor, the presentation of the merits factor, does weigh in favor of allowing Defendant to change his admissions. In assessing whether withdrawal and amendment would promote the presentation of the merits of the action, courts look at whether the proposed amendments "will facilitate the

13

development of the case in reaching the truth, as in those cases where a party's admission[s] are inadvertently made." *McClanahan*, 144 F.R.D. at 320 (quoting 4A Jeremy C. Moore et al., Moore's Federal Practice para. 36.08 (2d ed. 1992)); *see also Adventis*, 2006 WL 2631760, at *2 (reviewing cases). Courts have found that this prong is met when, as here, the deemed admissions effectively resolve the case and thus upholding the admissions would eliminate any need for a presentation on the merits. *See e.g. Conlon v. U.S.*, 474 F.3d 616, 622 (9th Cir. 2007); *FDIC v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994). In the instant case, as in *Conlon*, the moving party has filed its summary judgment motion based substantially on Defendant's deemed admissions. (*See* Pl. Mem. at 1.) The deemed admissions completely resolve Plaintiff's claim for future lost profits from Defendant's premature cessation of operating the franchise. The admissions establish that the franchise agreement continued to June 6, 2015, that Defendant knew premature abandonment of the franchise would give rise to a contract claim for future lost profits, and that this premature cessation of operation resulted in at least $86,765.40. (Ex. E to Pl. Mem. [Dkt. 56-1].) The deemed admissions also resolve that "Defendant has failed to expend the requisite amounts in advertising under the Franchise Agreement." (Ex. E ¶¶ 3-5, 12-14.) As a result, upholding these deemed admissions would eliminate a need for

14

presentation on the merits of Plaintiff's claim.  The first Rule 36(b) factor therefore supports allowing Defendant to withdraw and amend his deemed admissions with his untimely filed admissions.

The second prong (prejudice to the party relying on the admissions), however, weighs against allowing Defendant to change his admissions.  In analyzing this factor, courts consider "the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered."  *J & J Sports Productions, Inc. v. Mumford*, No. CIV.A. DKC 10-2967, 2012 WL 1409588, at *4 (D. Md. Apr. 20, 2012) (quoting *McClanahan*, 144 F.R.D. at 320).  A party's reliance on deemed admissions in preparing a summary judgment motion is not sufficient alone to constitute the requisite prejudice under Rule 36(b).  *See Conlon*, 474 F.3d at 623-24 (collecting cases); *Mumford*, 2012 WL 1409588, at *4.  However, the prejudice to a party rises the longer and more the party has relied on the admissions.  "With the passage of time and as each moment for response to a pleading slipped by, [a party's] burden for withdrawal of the deemed admissions is raised and the prejudice to the [relying party] is increased."  *In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 661 (E.D. Va. 1999).

As a result, courts have found that the following factors indicated that a withdrawal of admissions would result in sufficient prejudice to a relying party: a number of months had passed after the deadline to respond to requests for admissions; it was near or after the close of discovery; the relying party had foregone some discovery based on the admissions; the opposing party repeatedly had failed to respond to discovery requests or communications; and / or the opposing party had received some notice from the relying party or the court of the consequences of failing to respond to discovery requests. *See Conlon*, 474 F.3d at 624-25 (upholding district court's finding of prejudice where party seeking to use default admissions on summary judgment had "relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that [the unresponsive party] intended to file a motion to withdraw his admissions," relying party had foregone some discovery in reliance on the deemed admissions, and unresponsive party "had fair warning of the consequences of his noncompliance"); *Metpath*, 934 F.2d at *1, *3 (upholding district court's finding of prejudice where party provided untimely responses to requests for admission over a month past the deadline, its "efforts to comply with Rule 36 were minimal at best," and requiring relying party to obtain evidence to prove deemed admissions would result

16

in further delay); *Mumford*, 2012 WL 1409588, at *4 (holding that where a party relied on deemed admissions for months past the response deadline, *pro se* opposing party had at least two months of notice about the implications of failing to respond, and discovery had closed, relying party would be prejudiced if deemed admissions were withdrawn and it could not use them on summary judgment); *Sommerville v. Dobson*, No. 4:10CV67, 2011 WL 9160525, at *3-4 (E.D. Va. Mar. 8, 2011) (finding prejudice where relying party proceeded with discovery under the assumption that the unanswered admissions were admitted, discovery was closed, opposing party significantly delayed in seeking withdrawal, and relying party relied on deemed admissions in crafting its summary judgment motion); *In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d at 661 & n.12 (finding relying party would be prejudiced by withdrawal where opposing party repeatedly was unavailable or unresponsive throughout discovery, opposing party received notice by the court and relying party about its delinquency in answering discovery, opposing party significantly delayed in seeking withdrawal, and relying party explicitly relied on deemed admissions in its summary judgment motion).

The Court finds that all of these pertinent factors are present in the instant case and therefore concludes that allowing Defendant to withdraw and amend his deemed admissions

17

with his untimely responses would result in prejudice to Plaintiff.  First, Defendant did not submit his untimely response to Plaintiff's Requests for Admission until October 24, 2012, over three months past the original deadline to respond and over two months beyond the extended deadline which Plaintiff granted Defendant upon his request.  (Pl. Mem. at 5; Ex. H. to Pl. Mem.)

Second, this significant delay is part of a larger pattern of general unresponsiveness and repeated delinquency by Defendant during the overall discovery process and litigation. At the very beginning of this litigation, Defendant filed his Answer late.  (Pl. Mem. at 5; Dkt. 2, 18-19.)  Defendant failed to comply with the Court's September 4, 2012, Scheduling Order that prior to the pretrial conference, the parties must meet and confer pursuant to Rule 26(f) and file proposed discovery plans. [Dkt. 41, 51.]  Defendant did not respond to Plaintiff's attempts to contact him and comply with this order, resulting in Plaintiff submitting its own proposed discovery plan and in the Court adopting this plan at the pretrial conference.  [Dkt. 51, 54-55.]  Defendant also failed to meet the original or extended deadline to respond to the other outstanding discovery requests (Plaintiff's interrogatories and document requests) in addition to the requests for admissions.  (Pl. Mem. at 5-6; Pl. Mem. Motion to Compel [Dkt. 43] at 2; Dkt. 42-43.)  Defendant's

delinquency in discovery continued even after this Court granted
Plaintiff's Motion to Compel and ordered that Defendant make
complete discovery responses by October 12, 2012.  [Dkt. 48-49;
Pl. Mem. at 6.)  Moreover, although Defendant finally submitted
some responses to Plaintiff's pending discovery requests the day
following the pretrial conference after being admonished by
Magistrate Judge Buchanan, the responses submitted are not fully
complete.  (Pl. Mem. at 6; Ex. H-J to Pl. Mem.)  For example,
Defendant submitted only a single document -- a short, minimally
detailed chart of advertising expenses -- in response to
Plaintiff's 13 document requests.  (*Compare* Ex. G to Pl. Mem.
*with* Ex. J to Pl. Mem.)  In particular, Defendant failed to
produce income tax returns, receipts or other proof of the
claimed advertising expenditures, or any documents relating to
the sale of the franchise's premises.  (*Id.*)  As a result,
Defendant still is not in full compliance with this Court's
order that he provide complete discovery responses.

         Third, at this point, discovery is nearly over as it
is set to end on December 14, 2012 pursuant to the Court's
September 4, 2012 Scheduling Order, only few days after the
issuance of this opinion.  [Dkt. 41.]  Fourth, Defendant has had
notice of the potential consequences of failing to respond to
discovery requests since the Court's September 28, 2012, Order
which "warned [him] that failure to comply with this order may

result in sanctions, including default judgment." [Dkt. 49.]
As a result, the Court concludes that Plaintiff reasonably
relied on Defendant's deemed admissions in determining how to
pursue discovery and summary judgment and therefore would be
prejudiced if it could not rely on them here.  Accordingly, the
Court finds that Defendant has not met the Rule 36(b) test for
withdrawal and thus the Court will not permit him to substitute
his untimely responses for his deemed admissions.

       Like other courts before it, this Court acknowledges
the harshness of such a conclusion given that, as here, the
failure to respond timely to admissions "can effectively deprive
a party of the opportunity to contest the merits of a case."
*Hill*, 2006 WL 2631796, at *3.  "The result, however, is
necessary to insure the orderly disposition of cases for which
parties to a lawsuit must comply with the rules of procedure."
*Id.*  As observed by the Advisory Notes to Rule 36, "[u]nless the
party securing an admission can depend on its binding effect"
except if withdrawn by the opposing party upon a showing of
meeting both Rule 36(b) factors, then the relying party "cannot
safely avoid the expense of preparing to prove the very matters
on which he has secured the admission, and the purpose of the
rule is defeated."  Notes of Advisory Committee on Rules - 1970
Amendment, Fed. R. Civ. P. 36.

B. <u>Summary Judgment</u>

Given the Court's conclusions that Plaintiff's Requests for Admissions are conclusively established, the Court finds that summary judgment is appropriate based on the deemed admissions as well as other undisputed evidence provided by Plaintiff.[1]  It is well-established that matters deemed admitted by default "may constitute the basis for a court's favorable consideration for summary judgment." *Hill*, 2006 WL 2631796, at *2; *see also Adventis*, 124 Fed. App'x at 173 ("Rule 36 admissions are *conclusive* for purposes of the litigation and are sufficient to support summary judgment.") (quoting *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992); *Mumford*, 2012 WL 1409588, at *3.

In order to recover for breach of contract, a plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E. 2d 610, 614 (Va. 2004).[2]  First, the undisputed facts show that Defendant was legally obligated to operate a franchise

---

[1] Because the Court will grant summary judgment for these reasons, the Court will not address separately Plaintiff's argument that summary judgment should be granted as a sanction for Defendant's failure to comply with this Court's September 28, 2012 Order to provide complete discovery responses by October 12, 2012.  (Pl. Mem. at 9-11.)

[2] As noted in this Court's earlier opinion on Defendant's motions to dismiss, the Court applies Virginia law.  (*See* Mem. Op. [Dkt. 34] at 13 n.4.)

21

business through June 6, 2015, to pay an operating fee of 7.5 percent of weekly gross sales, and to pay an advertising fee of 9 percent of weekly gross sales or expend a portion of such on advertising.  By the plain terms of the Franchise Agreement ("the Agreement") and Letter Agreement and by Defendant's default admissions, Defendant entered into the Franchise Agreement to "operate an automotive service business" for a term extending to June 6, 2015.  (Agreement § 1.1.; Letter Agreement; Ex. E ¶¶ 12-14.)  The Agreement also sets out Defendant's obligation to pay the operating fee and expend the advertising fee.  (Agreement §§ 3.2, 3.3.)  Second, it is undisputed based on the default admissions that Plaintiff "has fully performed its obligations under the Franchise Agreement."  (Ex. E. ¶ 1-2.)

Third, it is uncontroverted that Defendant breached these obligations based on the default admissions which confirm that "Defendant knew that premature abandonment of the center would give rise to a contract claim against him for future lost profits," that there was "premature cessation of operations of Precision Tune automotive service center in December of 2011," and that "Defendant has failed to expend the requisite amounts in advertising under the Franchise Agreement." (*Id.* ¶¶ 3-5, 12-14.)  Plaintiff has also submitted clear evidence of Defendant's insufficient expenditure on advertising via a gross sales report documenting Defendant's revenue for the 2007-11 period, a chart

22

produced by Defendant in discovery indicating his advertising expenditures during that period, and a calculation of the shortfall between the amount expended and the amount required to be spent on advertising from February 16, 2007 through 2011.[3] (*See* Falconi Decl. ¶ 5, Pl. Mem.; Exs. C, D to Pl. Mem.)

Fourth, it is undisputed that Defendant's breaches resulted in no less than $148,491 of damages to Plaintiff.  This total amount includes $64,980 in advertising expenditures that Defendant failed to properly expend from the period of February 16, 2007 through 2011, as established by the gross sales report, chart of advertising expenditures, and corresponding shortfall calculation discussed above. (*Id.*)  This total amount also includes $83,511 in lost profits resulting from Defendant's premature cessation of operation in December of 2011, as admitted by default by Defendant and supported by Plaintiff's calculations in Robert Falconi's declaration and supporting documentation of average weekly sales. (Exs. C, E ¶ 5; Falconi Decl. ¶ 6, Pl. Mem.)

Based on the review of the evidence above, the Court concludes that there are no genuine issues of material fact regarding any of the elements of Plaintiff's breach of contract claim, and that the undisputed facts entitle Plaintiff to

---

[3] The statute of limitations for contracts in writing is five years.  Va. Code. § 8.01-246(2).  Plaintiff filed its Complaint on February 16, 2012. [Dkt. 1.]

judgment as a matter of law.  Accordingly, the Court finds that Plaintiff has met its burden for summary judgment.

The terms of the Franchise Agreement provide for an award of "all costs and expenses, including reasonable legal and accounting fees, incurred by Franchisor in connection with obtaining damages or injunctive or other relief for the enforcement of any provisions of this Agreement." (Agreement ¶ 16.2.)  The Court will order Plaintiff to submit a petition for reasonable attorneys' fees, as the party requesting fees bears the burden of demonstrating the reasonableness of the fees it seeks to recover.  *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews,* 7 F.Supp.2d 733, 736 (E.D. Va. 1998). Plaintiff's petition shall include a breakdown of hours billed and other information relevant to the factors set forth in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978), and other applicable law.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| December 11, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |